**FILED**

OCT 3 1 2012

Clerk, U S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

JOHN A. CHAMPION, **#09586007** :
        Petitioner,               :
*U.S.P. Allenwood*                :
*P.O. Box 3000, White Deer, PA 17887* :
        V.                        :
                                  :
RONNIE R. HOLT WARDEN,            :
        Respondent.               :

Case: 1:12-cv-01780
Assigned To : Bates, John D.
Assign. Date : 10/31/2012
Description: Habeas Corpus/2255

PETITION FOR WRIT OF HABEAS CORPUS
FOR STATE PRISONERS 28 U.S.C.S §2254
*With 50 Exhibits*
BACKGROUND

Petitioner was convicted in 1998 in the District of Columbia
Superior Court of second-degree murder and was sentenced to 20 to
life of imprisonment and he  challenges the lawfullness of his
continued custody by the District of Columbia officials.  Petitioner
alleges that his trial counsel  and appellate counsel was ineffective.
Petitioner sought relief in the Superior Court, but his motion to
vacate his sentence under D.C. Code §23-110 was denied without a
hearing.  Petitioner contends that the remedy afforded to him
under D.C. Code §23-110 is inadequate and he's challenge the
ineffective and the lawfulness of his confinement.  He accordingly
seeks a writ of habeas corpus in this court.

The petitioner has exhausted the remedies available in the
courts of the States.

On August 21, 2006, and March 4, 2009 the petitioner filed a
motion to withdraw Plea, Vacate, Set Aside or Correct Sentence.



Both motions were denied from the D.C. Superior Court.  Though Champion's motion was received in 2006, for reason unexplained it was not docketed until 2009, and also the government failed to file any affidavits contesting the factual allegations in Mr. Champion's 2009 memorandum, it made no response whatsoever.  Based on errors made by the court and ineffective assistance of counsel, the Superior Court construed his filing as a motion attacking his sentence under D.C. Code §23-110 and denied the motion on March 15, 2011.  Petitioner since has made several attempts to withdraw his guilty plea both in the Superior Court and in the District of Columbia Court of Appeals, and he has filed a petition for a writ of certiorari in the Supreme Court of United States which was denied on October 3, 2011.  On October 10, 2011 the appellant filed a pro se motion to recall the mandate, which was denied on November 18, 2011.

## INEFFECTIVE ASSISTANCE OF COUNSEL

U.S. Dist. LEXIS 46521 Briscoe v. Wagner April 21, 2010.  As for the claim of ineffective assistance of appellate counsel, the defendant has moved in the D.C. Court of Appeals to recall the mandate, which is "the appropriate vehicle" for mounting a challenge to the effectiveness of appellate counsel.

Williams v. Martinez, 586 F.3d 995, 999 (D.C. Cir. 2009).  This court therefore is with jurisdiction to entertain this federal habeas corpus petition asserting his ineffective assistance of appellate counsel because the petitioner has moved to recall the

2

mandate in the D.C. Court of Appeals which was denied.  The petitioner is asking this court to recall the mandate in the D.C. Court of Appeals under 28 U.S.C. §2254(b)(1)(A) which it shall be granted because (1) the petitioner has exhausted the remedy available in the local court and the D.C. Court of Appeals, (2) That he was denied his constitutional rights at trial and that his guilty plea was invalid, and that he is being unlawfully detained by D.C. Courts and the U.S. Attorneys Office, causing him to be in prison subjected to physical restraint, (3) Superior Court lacks authority to review appellate proceedings; on the other hand the D.C. Court of Appeals had at that time failed to clarify what avenue of local relief remained open to him, (4) Petitioner also declares that he is innocent of the charges to which he pled guilty, and thus seeks a writ of habeas corpus in order to avoid total miscarriage of justice, "as well as for relief for alleged violations of rights protected under the Fifth and Sixth Amendments to the United States Constitution.

John Champion has petitioned this court for a writ of habeas corpus alleging that (1) Petitioner has established actual innocence by clear and convincing evidence, (2) Prosecutions knowing use of perjured testimony and fabricated evidence as well as police and prosecutorial misconduct, including alteration of evidence, witness tampering and Brady and Giglio violations, U.S.C.A. Const. Amend. 14.

**Questions presented:**  (1) Is a state habeas petitioner entitled

3

to relief where in his petition, he cited numerous actions by
his attorney which allegedly constituted ineffective assistance
of counsel at both the trial and appellate levels ? In this
exceptional case based upon evidence of the petitioner's actual
innocence discovered subsequent to a procedurally corrupt process
and unfair trial, when the petitioner has raised a substantial
showing of deliberate framing, the innocence, the lower court
refused to address his innocence on the merits, and no state
court has allowed discovery or an evidentiary hearing to examine
his new evidence of innocence and the state court fact finding
has been inadequate? (2) Whether a defendant may enter a voluntary
plea of guilty to a charge of second-degree murder without being
informed of the element of the offense, acted with malice?

Townsend v. Sain, 372 U.S. 293, 9 L.Ed. 770, 83 S.Ct. 745.  In
a habeas corpus proceeding instituted by a state prisoner, a
Federal District Court must grant an evidentiary hearing if (1)
the merits of the factual dispute were not resolved in the state
hearing; (2) the state factual determination is not fairly
supported by the record as a whole; (3) the fact finding procedure
employed by the state court was not adequate to afford a full and
fair hearing; (4) there is a substantial allegation of newly
discovered evidence; (5) the material facts were not adequately
developed at the state court hearing; or (6) for any reason it
appears that the state trier of fact did not afford the applicant
a full and fair fact hearing.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Massaro v. United States, 500 (2003).  The appellant maintains
that there were arguments cases in his Post-Conviction Motion,
and Motion To Recall the Mandate D.C. Ct. 41(f) that warranted a
reversal.  The Petitioner also argues that his appellate counsel
failed to display all of Petitioner's ineffective assistance
claims constitutional hearing.  Champion's Claims regarding the
ineffective assistance of trial counsel was ineffective for
failure to seek suppression of the fruits of his allegedly illegal
arrest; (2) failing to file a motion to suppress the medical
examiner who performed an autopsy on Ms. Washington; (3) failing
to file a motion to suppress exculptory  evidence and exculptory
witnesses, (4) did nothing to address the problem or clarify the
audio cassettes of the rule 11 hearings, (5) The Appellate counsel
Mr. Hollander failed to attack the Plea Colloquy and Sentencing
transcripts which is the most important document to challenging
a guilty plea, Rule 11 and Rule 32(e).

Johnson v. United States, 631 A2d 871 (D.C. App 1993);
Thomas v. United States, 766 A2d 50, (D.C. 2001).  A guilty plea
may be withdrawn after sentencing only if defendant affirmatively
establishes that trial court's acceptance of his plea was
manifestly unjust and that plea proceeding was fundamentally flawed
such that there was complete miscarriage of justice, Criminal
Rule 32(e), Rule (11).  For example, Mr. Nichols, the trial
counsel, failed to alert the court to the fact that the plea

5

agreement was a Conditional plea agreement, Rule 11(e), and had
Champion to plead to the government charge [in the indictment]
(2) failed to provide the defendant with a copy of the plea
agreement offered by the U.S. Attorney office, (3) breached the
plea agreement, (4) Mr. Nichols, the defense counsel, for the
defendant concealed exculptory evidence and witnesses, (5) there
was no evidence of robbery, (6) there were no witnesses that saw
the defendant change his shirt or place Mr. Champion at the
crime scene, (7) Mr. Champion could not have been convicted of
first degree murder twice without violating his right against
double jeopardy, (8) the fingerprints and footprints at the
crime scene is not Mr. Champion's and the police first blood test
on his clothing was negative, (9) failure to inform defendant,
before his plea of guilty to a charge of second-degree murder that
intent to cause the victims death is an element of the offense,
(10) defendant's counsel's failure to attempt to subpoena all
exculpatory witnesses.

### THESE GROUNDS FOR RELIEF ARE AS FOLLOWS:

1. Defense counsel John Kenney and Ron Reece the investigator
refused to give the defendant names of everyone he had interviewed
or the facts and details of his investigation, and abandoned Mr.
Champion before trial, and the court granted Mr. John Kenney's
motion to withdraw on January 28, 1999 and appointed Archie
Nichols on February 11, 1999. Both defense counsels, John Kenney
and Archie Nichols, (a) gave petitioner no pretrial advice, (b)

did not explain to him the nature of the charges brought against him, (c) did not explain the possible sentences on those charges and (d) did not explain the likelihood of conviction versus a acquittal.

2. Archie Nichols, defense counsel, did not counsel with the petitioner at all untill six days prior to trial.

3. Defense counsel (a) failed to enter into the plea negotiations on petitioner's behalf, (b) did not explain to petitioner the advantages and disadvantages of going to trial versus accepting a plea bargain.

4. Defense counsel, Archie Nichols, did not ask for a continuance and did not adequately prepare and make use of pretrial discovery. Both discovery supplied by the prosecutor and discovery defense counsel could have developed on his own.

5. Defense counsel did not adequately prepare petitioner to testify.

6. Mr. Champion's direct counsel, Thomas T. Heslep, impeded defendant obtaining the evidence, documents and subpoena witness.

### MANIFEST INJUSTICE AT PLEA HEARING AND AT SENTENCE

The appellate counsel was ineffective for failing to utilize the plea colloquy transcript and sentencing transcript which is the most important document available to a defendant when he is challenging his conviction. The appellate counsel, Mr. Hollander, took no steps pursuant to the D.C. Ct. App. R. 10(c)(d) to prepare a statement of the plea colloquy transcripts and evidence in lieu

7

of the unavailable February 11, 1999 audio tape recording.  This
claim was a fact-intensive issues that could not be resolved with-
out the tape and Champion was not personally at fault in failing
to provide the record.

Cobb v. Standard Drug Co, 453 A2d 110 (D.C. App. Sept. 14, 1982).
The audio tape would have been a very helpful evidence in Champion's
case, that the transcripts of Feb. 11, 1999 are edited by deleted
and substituted Champion's statement in Rule 11 colloquy.  Superior
Court of District of Columbia entered judgment without reviewing
the tape record of the February 11, 1999 transcripts.  Court
reporters act guarantees right to complete transcripts of proceedings
and trial.

28 USCA §753(b)(1) 10(c)(e) United States v. Wilson, 16 F.3d 1027
(9th Cir.), Cole v. United States, 478 A2d 277 (D.C. App 1984),
Williams v. United States, 927 A2d 1065 (D.C. 2007).  The defendant
argues that his due process rights were violated under USCA Const.
Amend. 5, 6, & 14 USCA 753(b)(1) because the court reporters and
the District of Columbia Superior Court altered and replaced the
defendant's statements at the plea hearing.

The plea colloquy transcript of February 11, 1999 are edited.
The government deleted and substituted the defendant's statement
in rule 11 colloquy transcript.  See page 12 at 23, 24, 25; page
13 at 1.  The defendant: "Well I was behind my rent at the time,
I was high, drunk and just had a whole lot on my mind and every-
thing and I took an object and hit her with it".  The defendant

8

argues that he never told the court that he was behind in his rent and he had hit Ms. Louise Washington with an object. The government committed manifest injustice when the court substituted defendant's statement. The [Appellant] bears the burden of presenting this court with a record that an error occurred at the trial.  Cole, supra 478  A2d 110, 111 (D.C. 1982)(other citing, omitted.  Under the version of D.C. App. R. 10(d)).

### MR. HOLLANDER FAILED TO FILE ANY ARGUMENT ABOUT THE PLEA AGREEMENT WHICH WAS RULE 11, RULE 32(e).  IN HIS BRIEFS.

618 A2d Eldridge v. United States, (D.C. Court).  The appellant challenged the judgment of the Superior Court of the District of Columbia which denied his motion to withdraw his guilty plea under Super. Ct. R. 32(e) and to vacate his sentence D.C. Code §23-110.  Appellant's waiver of his constitutional rights was not knowing and intelligent with respect to the new plea package. The appellant pleaded guilty to the indictment and was sentenced to prison for twenty years to life.  Champion's primary issue on his appeal was, he did not understand the consequences of his revised plea package and he did not sign it, and he never saw this new plea package.  The appellant argues that Mr. Nichols rendered ineffective assistance at the plea proceedings and sentencing hearing because he never outlined the new plea offer under which the appellant would plead guilty.  Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495 710 A2d 858 Demus v. United States (DC 1998). The appellant argues that his plea is a conditional plea, and the

judge had "no idea" at the plea hearing that the plea is a conditional plea and the plea colloquy record does not establish that the trial judge rejected the two plea agreements or accepted it.  Williams v. United States, 656 A2d 288 (DC 1995).  The trial court did not apprise the true nature of the plea agreement, Rule11(f).It is settled that a defendant bears the burden of establishing that a breach of the preponderance of the evidence at the plea hearing.  United States v. Gray, 291 F.3d 30 (DC 2002). The judiciary must ensure that such agreements are fair and entered into knowingly and voluntarily, Rule 11(e)(1).  263 F.Supp. 2d 10 United States v. Shah, (DC 2003).  Where the defect in the plea is not one that would appear on the record, an evidentiary hearing may be appropriate, United States v. Snow, 234 F.3d 187 (4th Cir. 2000).  It is settled that a defendant alleging the government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence. Champion claims prejudice occurred resulting in manifest injustice. Appellant was deemed unaware that under the new package he was pleading guilty to carried an additional mandatory sentence for his crime.  Super Ct. Crim. 11(c)(1).

For his final agrument, petitioner argues that the breach allows him to rescind the agreement and withdraw his plea.  The plea agreement is an integrated final expression of the parties bargain.  878 A2d 1204 Joseph v. United States, (DC 2005).  The petitioner argues that the trial counsel was ineffective for not

advising the defendant, Champion, to maintain his initial guilty plea. (2) The D.C. court erred by failing to adress Champion's Post-Conviction Motion and Motion to Recall the Mandate under D.C. Ct. App. R. 41(f), on his conditional plea. See: Feb. 11, 1999 plea hearing pg. 8 at 17, 18, 19. The Court: "Now is there anything about this plea agreement that you're not clear on or anything that you want to ask me about?" The Defendant: "No." The defendant failed to tell the judge about his conditional plea, and the government failed to fully disclose material elements of the plea agreement and the details of the plea agreement that Mr. Champion signed at the D.C. jail. See: Post-Conviction Motion pg. 13, 14, 15, 16. United States v. Roberts, 570 F.2d 999 (DC 1977). The plea agreement must be made part of the record, Super. Ct. Crim. R. 11(e)(2). (3) The court held that an evidentiary hearing was necessary to resolve disputed material facts of a plea agreement. Kyle v. United States, 759 A2d 197 (DC 2000).

## APPELLANT'S GUILTY PLEA WAS NOT
## VOLUNTARY OR KNOWING

McClurkin v. United States, 472 A2d 1348 (DC App. 1984). Appellant argues that his guilty plea was involuntary as a matter of Fifth Amendment due process because neither the court nor his counsel informed him of the element of second-degree murder while armed, particularly the element of "malice". In support of this contention, appellant relies upon the Supreme Court's decision in Henderson v. Morgan, supra, 426 U.S. 637, 49 L.Ed 2n 108, McCarthy v. United States, 394 U.S. 459, 22 L.Ed. 1461. See:

Post Conviction Motion pg. 25-29.  Consequently if a defendant
guilty plea is not equally voluntary and knowing, if it has been
obtained in violation of due process and is therefore void.
Johnson v. Zerbst, 304 U.S. 458, 82 L.Ed 1461.  Moreover, because
a guilty plea is an admission of all the elements of a formal
criminal charge, it cannot be truly voluntary unless the defendant
possesses an understanding of voluntary unless the defendant
possesses an understanding of the law in relation to the fact.
See Exhibit (10) A plea to the indictment, which means entering
a plea of guilty to everything that you are charged with, can be
done at any time, even during the trial.  The defense counsel gave
petitioner bad advice at pretrial.  759 A2d 192 Kyle v. United States,
(DC 1999).  Appellant next argues that his plea was tainted
becaue the D.C. Court substituted his statement at the Rule 11
colloquy, and his conviction warranted a reversal.

## THE GOVERNMENT WITHHELD EXCULPATORY
## DNA EVIDENCE

Veney v. United States, 929 A2d 448 (DC 2007).  Defendant
contends that his appellant counsel was ineffective for failing
to file a motion to suppress the first blood test from the DC
Police Dept. that was negative for blood, and the first blood
test from the FBI lab report (August 24, 1998).  Exhibits (16)
(18)(35) and the footprint and fingerprint that was in the blood
at the crime scene of the victim's house.  See exhibits (21) and
(23) which is exculpatory evidence.  Champion argues that the DNA

test of December 16, 1998 Exhibit (35) is false positive test.
Defendant further argues that the FBI's quality assurance protocals
are not generally accepted by the scientific community because they
lack of (1) safeguards against "interpretation bias",(2) independent
documented review process, (3) guidelines to prevent cross-contamination
of known and unknown DNA samples in the laboratory and (4) adequate
proficiency test, in as much as the tests were not double-blind.
Defendant argued that the trial court erred by not complying with
the requirement of D.C. §§22-4131 to 22-4135, regarding the District
of Columbia Innocence Protection Act of 2001.  Defendant argued
that the trial court erred by denying his trial counsel pretrial
testimony of the first government test from the D.C. Police Dept.,
that was negative for blood and the first blood test from the FBI
lab report (August 24, 1998) that would exonerate Mr. Champion.
See February 11, 1999 plea hearing transcripts pg. 11 at 22-25,
pg. 12 at 1-7.

   The FBI's laboratory examined those clothes and found several
blood spots on Mr. Champion's pants was found in one of those spots
was found DNA that matched Ms. Washington's, Louise Washington.
The Court:  Mr. Nichols rather than submit (indiscernible) I'm
inclined to inquire directly.  Is that all right?
Mr. Nichols:  That would be fine, Your Honor.
The Court:  I just wanted to make sure from you.  All right.
The transcripts show one thing, that the trial judge, Nan R.
Chuker, participated in a cover up on the DNA test that could

exonerate Mr. Champion.   United States v. Porter, 618 A.2d 629
(D.C. App. 1992).   In this case the trial court, the prosecution
elected to put all of its eggs in a single basket before utilizing
the first government test from the police dept., Exhibits (16) (18)
that was negative for blood on Champion's pants, and the first
FBI test of August 24, 1998,  Exhibit (35) before utilizing the
last FBI blood test of December 16, 1998, Exhibit (35) which is
a false positive test.   The defendant further argues that the FBI's
blood test, Exhibit (35), should not have been admitted because
(1) possibility of a random match was one in 30 million which this
case was 1 in 14,000 in the Black population, 1 in 21,000 in the
Caucasion population, 1 in 14,000 in the Southwestern Hispanic
population, 1 in 56,000, (2) The resulting probability for the
defendant's entire DNA pattern may be in error by two or more
orders of magnitude (e.g. 1 in 1,400 could really be 1 in 400).
Richard C. Lewontin of Harvard University and Daniel L. Hartl of
Washington University attack the reliability of the DNA test in
the Porter case.

Champion challenged inter alia the following:

(1) The FBI's practice of declaring a match by both visual
and computer-assisted means;

(2) The FBI's failure to replicate test results;

(3) The inability of the FBI to precisely measure the VNTR;

(4) The absence of standards governing forensic DNA TYPING;

(5) The FBI's purported lack of a blind proficiency testing

program; and in light of the foregoing,

(6) The alleged existence of a significant danger that a
false positive could be called a match.

The consensus that will satisfy Frye is that of scientists, not
courts, People v. Reilly, Cal. App. 3d 1127, 1135, 242 Cal. Rptr.
496, 500 (1987) for "a courtroom is not a research laboratory,"
United States v. Brown, 557 F.2d 541, (6th Cir. 1997).  Accordingly,
"the court may not resolve a scientific dispute between opponents
and proponents of the techinque, [and] the very existence of the
dispute precludes admission of the testimony." See Griffin v. United
States, 618 A.2d 114, 119 (DC 1992).  Porter court engaged in a
broad review of the trial judges determination whether the forensic
use of DNA technology has gained general ecceptance.

Jones, supra, 548 A.2d at 40.  A criminal trial is not a game,
but a quest for the truth and that the two-fold aim of criminal
justice is that the guilty shall not escape and the innocent should
not suffer.  These issues were not focused upon by the court and
counsel during the plea hearing and sentencing, and the trial
judge had committed error when she admitted evidence that the
probability of a coincidental DNA match was one in 14,000.  The
prosecution failed to demonstrate that the DNA blood test from the
police department exhibits (16)(18) and the first FBI DNA blood
test, August 24, 1998 was negative for blood on his pants and
clothing, which was not positive match from Q33 swab (item number
8) at the crime scene, and the DNA taken from the defendant's K2

blood sample from John Champion (item number 29).

## CHAIN OF CUSTODY

Wagney v. State, 864 A.2d 1038.  The law requires a party to
establish a chain of custody when offering certain items of evidence
that got seized from the defendant.  When the defendant clearly
presents evidence of tampering it is the government's burden to
prove that the pants not been substituted, tampered with, replaced,
or altered.  747 A.2d 1182 Inre D.S. (DC 1999).  Champion further
contends that the court erred in admitted the pants into evidence
that was allegedly seized from him because the first DNA blood
test from the police department had no blood on it, and because the
defendant failed to object to the admission of the pants into
evidence at the plea hearing, the Appeal Court must review his
claim under a plain error standard.  When the Appeal Court reviews
for a plain error, it should reverse the trial court's decision
because the error is "so clearly prejudicial to substantial rights
as to jeopardize the very fairness and integrity of the trial".
Watts v. United States, 362 A.2d 706, 709 (DC 1976)(en banc).
Champion specifically argues that the government failed to demonstrate
that the pants admitted into evidence had blood on it from the
police department Exhibits (16)(18) and the first FBI test August
24, 1998.  A chain of custody for real evidence must be established
if (1) the item is not readily identifable (2) the item is readily
identifiable but the witness neglected to note the characteristics
that make the item readily identifiable; or (3) the item is

susceptible to alteration by tampering or contamination.  See
Federal Evidence Practice Guide and 2.10 (Matther Bender and
Co. 1997).  One way that chain of custody can be shown is by having
the police officer initial the evidence.  See Turner v. United States,
626 A.2d 872, 873 (DC 1993).  We further noted that the evidence
of a break in the chain of custody affects only the weight to be
given to that evidence by the factfinder.  See Id. at 1074.
Turner v. United States, 626 A.2d 872 (DC 1993).  The government
had failure to presented sufficient evidence to establish the
chain of custody of the pants where each laboratory had tested
the pants, and the handling of the pants and the condition of the
pants.

"FRUIT OF THE POISONOUS TREE"

Patton v. United States, 633 A.2d 800 (DC App. 1993).  The
appellant argues that the appeal counsel was ineffective by failing
to file a motion to suppress all statements made by the appellant
and the police officers that were guarding Ms. Washington's house
on May 11, 1998 at 5:00 am at the homicide office.  (2) The
government failed to satisfy its burden that the police had
probable cause to arrest the appellant at the time he was transported
to the homicide office.  (3) Evidence discovered as the result of
an illegal seizure generally must be suppressed as "fruit of the
poisonous tree".  This rule applies to both physical evidence and
testimonial evidence.  Wong Sun v. United Staes, 371 U.S. 471,
9 L.Ed. 441.  The appellant moved to suppress his pants and the

17

other items siezed from him on the grounds that the search
warrant was invalid because the affidavit which was based entirely
on statements from the gay guy, Charles Moore, that was one of
the boarders at Ms. Wahington's house that found Ms. Louise
Washington on the kitchen floor with a telephone cord wrapped
several times around her neck, suffering from blunt force injury
to the head which was based entirely application did not provide
probable cause, for three reasons. First, appellant argued that
Ms. Washington could not say that "Tony did it" when she was semi-
conscious or unconscious. See Exhibit (17) and Exhibit (24) the
Washington Post Newspaper. (2) See Sentencing Memorandum pg. (2)
Engine 10 firefighters were the first to arrive at 1121 8th Street
after a witness called 911. One of the firefighters cut the cord
off Ms. Washington's neck.

The plea colloquy transcripts of February 11, 1999 pg. (10)(11)
doesn't say anything about the firefighters cutting the cord off
of Ms. Washington's neck or say that Tony did it to me. (3) Ms.
Washington could not be still alive after been choking and
stangulation for two hours. (4) The detective, Pamela Reed, of
the Fifth District Police Station that prepared the search warrant
contained false statements and were made knowingly and intentionally
or with a reckless disregard for the truth to deceive the judge.
(5) Appellant next argues that the two police that was guarding
the victim's house did not (a) read the miranda warnings to the
appellant, (b) appellant was brought to the homicide office without

18

handcuffs, see Exhibits (14) and plea colloquy pg.(11) and the
Washington Post Newpaper, Exhibit (27).  The record and files show
inconsistent statements  from the government.  Also see arguements
from Judge Kave K. Christian response to defendant  2009 motion
Exhibits (47).  At approximately 5:00 am on May 11, 1998, the
defendant returned to 1121 8th St. NE.  The police stopped the
defendant upon his arrival and arrested him.

## AT THE HOMICIDE OFFICE

At about approximately 5:20am Mr. Champion arrived at the
homicide police station and the door to the interrogation room
was unlocked and have been open a while.  Champion went in and out
of the interrogation room to get a drink of water from the hallway
without an escort.  I also ask the detective at the homicide office
could I use the phone and he said yes.

Champion made three calls, (1) to his mom, Alice Veney (2)
Frances Brown, (3) to his job to tell his boss that he will be
late for work.  These calls was approximately 7:30am.  At a little
after 8:00 am the detective at the Homicide Branch told him that
a detective will interview him real soon and locked the door on
him.  He never told Mr. Champion that he was under arrest.  At
approximately 8:45 am Detective Rita A. Brown and Detective
Willie Jefferson the two new detectives told him that he was being
placed under arrest, and give him his Miranda rights.  See Exhibits
(29).

Appellant alleges that the police dept. and the United States

19

Attorney's office had violated his rights under the Fourth
Amendment and Fourteenth, Fifth Amendments, and that his appellate
counsel was ineffective by failing to bring up additional ineffective
assistance trial claim.  The appellate counsel, Mr. Hollander
deprived the appellant of his Sixth Amendment rights to present
falsifying evidence by police and the prosecutor's office.

The appellant argues that Detective Rita A. Brown at the
Homicide Branch, falsified the time that Mr. Champion had signed
the Miranda rights card.  The appellant argues (1) that he signed
the Miranda card at 8:39am on May 11, 1998 not at 7:35am and that
Detective Rita A. Brown failed to satisfy its burden that she
placed Mr. Champion in custody or seized appellant during the
unexplained time between the time Detective Rita A. Brown and
Detective Willie Jefferson arrived at the homicide Office at
8:39 am May 11, 1998.  (2) The appellant also argues that Detective
Brown and Detective Jefferson could not had been in the Homicide
Office at 7:30 am May 11, 1998 because both detectives failed
to sign the waiver card at 7:35am May 11, 1998 as a witness.
See Exhibits (46).  It is undisputed that there was no probable
cause to arrest the appellant at the time he was transported to
the homicide office so if indeed that the detective Brown could
not deposition the search warrant for Mr. Champion's clothing and
shoe at 7:30am May 11, 1998 because she had encounter with the
appellant no earlier that 8:39 am May 11, 1998 when she arrived at
the interrogation room and started the interview with Mr. Champion.

(3) Champion contends, that he had mentioned a alibi witness, but Det. Rita A. Brown (02-90) deleted this out of his miranda rights statement. See Exhibits (29) and Post Conviction motion pg. (23) (24).

Defendant contends that his statement and all evidence must be suppressed on the grounds that they were obtained in the violation of his rights under the Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2 694 (1966). The appellant alleges that his conviction must be reversed on the grounds that he was not warned of any of his rights before questioning by police at Ms. Washington's house or at the homicide office untill 8:43 am May 11, 1998 and that the police at the homicide office falsified the Miranda waiver card from 8:39am to 7:35am, and that no other steps were taken to protect his right, and that he was then handed over to Detective Rita Brown and Detective Willie Jefferson after some 3 hours and 39 minutes obtained one signed from Mr. Champion, and defendant denying the alleged offenses through the 3 hours and 39 minutes of the police custody. The Supreme Court holding that his statement was not admissable because defendant should have been advised of his right to remain silent and of his right to counsel. On this record which did not show that any warnings had been given or that any effective alternative had been employed untill 8:39am May 11, 1998. Also see Plea Colloquy transcript of February 11, 1999 pg. 11. The defendant left 1125 K Street the following day Monday, May 11, 1998 at about 5:00am, returned to 1121 8th Street, where

he was stopped by the police.  **"Not arrested"**.  The police did
not have a probable cause and that the search and seizure were in
violation of the Fourth and Fourteenth Amendment Franks v. Delaware,
438 U.S. 154, 57 L.Ed. 2d 667 held that (1) where a defendant made
a substantial preliminary showing that a false statement knowingly
and intentionally, or with reckless disregard for truth, was
included by an affiant in his affidavit for a search warrant, and
if the alleged false statement was necessary to the finding of
probable cause, the Fourth Amendment required that a hearing be
held at the defendant's request so that he might challenge the
truthfullness of factual statements made in the affidavit, and (2)
if at such hearing the defendant establishes by a prepondrance of
the evidence the allegation of perjury or reckless disregard, and,
with the affidavit's false material set  to one side, the affidavit's
remaining content was insufficient to establish probable cause, the
search warrant had to be voided and the fruits of the search
excluded to the same extent as if probable casue was lacking on
the face of the affidavit.  (3) The arrest warrant was in the
violation of the Fourth Amendment and Rule 3 and Rule 4, Fed. R.
Crim. P 5 (a) which requires that an unexecuted warrant must be
returned to the judicial officer or judge who issued it and must
be canceled by a magistrate judge. See Corley v. United States,
173 L.Ed. 2d 443, L.Ed. 2d 443, 556 US.  The rule remains much
the same today that a person making an arrest within the United
States must take the defendant without unnecessary delay before a

magistrate judge, Fed. Rule Crim. Proc. 5(a)(1)(A)(2007).

    The Detective Rita Brown and the magistrate judge Stephen G.
Milliken failing to execute a arrest warrant that was signed by
administer oaths, and that a determination of probable cause is
a mixed question of law and fact, and therefore this case is subject
to de novo review. The government bears the burden of showing that
a unsigned arrest warrant did not violate his Fourth Amendment
right. The right is the people to be secure in their persons,
house, papers and effects against unreasonable searches shall
issue, but upon probable cause, supported by Oath or affirmation
and particularly describing the place to be searched, and the
persons or things to be seized.

SEARCHES AND SEIZURES

    To challenge search warrant affidavit successfully, under
Franks test, the defendant must meet by a four prong test. (1)
affidavit contained false statements, (2) false statements were
made knowingly and intentionally or with a reckless disregard for
the truth, (3) false statements were material to issue of probable
cause, and (4) without false statements, the affidavit is insufficient
to establish probable cause. The appellant alleges that he has
met all four prongs under a Franks test and the warrant must be
voided, and an evidentiary hearing is required to resolve whether
evidence should be suppressed. Because (a) information given by
witness No. 1, Charles Moore, to Det. Pamela Reed of Fifth District
Police station was somewhat different from Det. Rita Brown and

23

Det. Willie Jefferson unexecuted arrest warrant.  See Exhibits
(13)(14)(17)(31)(43) and search warrant, files (b) the officer
that prepared the arrest warrant with reckless disregard for the
truth because the transcript of the plea hearing doesn't mention
anything about the firefighters cutting the cord off Ms. Washington's
neck or say that Tony did it to me.  See Exhibit (40) Sentencing
Memorandum pg. (2)(3) and (c).  In the search warrant the complainant
was still conscious before the ambulance arrived.  Exhibit (17).
The victim was in a semi-conscious state when she was found and
was subsequently transported to the hospital.  The record does not
say anything about put Tony out of the house because he owed rent.

    The petitioner argues that he made a substantial preliminary
showing that a false statement was knowingly and intentionally,
or with reckless disregard for the truth, included in bad faith.
Mr. Champion also sought permission to call Detective Pamela Reed
and Detective Rita Brown and himself as a witness, to seek to
establish that petitioner's statement to police had been obtained
in violation of petitioner's Miranda rights, and that the search
warrant was thereby tainted as the fruit of an illegally obtained
confession.  The appellant also had show that the arrest warrant
was made in bad faith, and was not issued by a detached and neutral
magistrate, and the warrant was reasonably relied on bad faith by
the police officers.  The petitioner is entitled under the Fourth
and Fourteenth Amendments to an evidentiary hearing to resolve
whether the evidence and statements should be suppressed.

### THE DC COURT'S VIOLATED THE
### PETITIONER'S 6TH AMENDMENT RIGHTS.

Wheat v. United States, 486 U.S. 153, 62 (1998).  In proceedings
at which the 6th Amendment right to counsel and if a judge is
alerted to a possible of a conflict of interest and fails to take
adequate steps to ascertain whether the conflict warrants separate
counsel the judge has unconstitutionally forced the defendant to
choose between proceeding with a lawyer who has an apparent conflict
or to give up his right to be represented by counsel.

Defendant argues that the judge is obligated to appoint new
counsel if a defendant can establish good cause and show that there
is a conflict of interest between defendant and counsel, and when
the DC court concealed overwhelming DNA evidence and witnesses,
that showed Mr. Champion's innocence, it is true that "extreme
delay" in the processing of an appeal may amount to a violation
of due process.  If the prisoner's §23-110 claim is sufficient
for a hearing, it presumably will be colorable enough to warrant
appointment of counsel under §11-2601(3)(A).  See Matos v. United
States, 631 A.2d 28, 33 (DC 1993).  In proceedings at which the
constitutional right to counsel applies (see supra note 36), a
judge may not allow a criminal defendant to proceed pro se unless
the judge has advised the defendant "of the dangers and disadvantages
of self-representation" and the judge had determined that the
waiver of the counsel is being made "knowingly and intelligently".
Faretta v. California, 422 U.S. 806, 835 (1975).  The defendant
argues that when he waived his right of counsel from appointed

25

counsel, Thomas Heslep, he had waived his rights with both eyes closed because when we turn to the record, it shows that Mr. Champion had told police on the day of his arrest that he dropped out of school at the seventh grade and that he had problems with reading and writing, and that he skipped words, the ones he don't understand.  See Exhibits (2)(5)(29).

The waiver was involuntary because the defendant was incompetent to understand the criminal justice system and that Mr. Thomas Heslep strategy was to make Mr. Champion frustrated by not assisting defendant in obtaining DNA results and fingerprint expert from his trial.  In his petition, he cited numerous actions by his attorney which allegedly constituted ineffective assistance of counsel at both the trial and appellate levels.  The defendant has shown good cause for discovery under Rule 6 and Rule 16, see Harris v. Nelson, 344 U.S. 286, 300 22 L.Ed. 281.  The Supreme Court discussed circumstances where the defenant may be entitled to post-conviction discovery relief, "where specific allegation before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, and it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.  In Brady v Maryland, 373 U.S. 83, 10 L.Ed. 2d 215, the United States Supreme Court held that when the prosecution withheld evidence which would exonerate defendant is violation of the Due Process under Sixth and Fourteenth Amendments.

Mr. Champion alleges that his appellate counsel, Mr. Robert Hollander, actually leaned over backwards in the favor of the D.C. courts to hide evidence of his actual innocence and that Mr. Champion concluded that he had shown **"cause"** and the appellate counsel, Mr. Hollander, performance was deficient for not bringing up additonal arguments that warranted a reversal on defendant ineffective assistance trial claim and that Mr. Robert Hollander's failure to argue and cite cases in his briefs that he had prepared in the behalf of his client. Mr. Hollander's deficience prejudiced his defense, and his appellate counsel errors were so serious as to if there is a reasonable probability that Mr. Champion had the evidence been disclosed to the defense, the result of the proceedings would have been different. In his 2254, the defendant has shown that first that appellate counsel's performance was deficient ... Second, deficient performance prejudiced Mr. Champion defense by failure to file a suppression motion for the blood test from police dept. Exhibit (18) that was negative for blood on defendant's pants and the FBI PCR test August 24, 1998 Exhibitss (35) that the trial counsel, Mr. Nichols told defendant's brother that there was no DNA evidence that matched Ms. Washington in this case and that there were no witnesses in this case against Mr. Champion. See Exhibits (5). Also, Mr. Hollander failed to suppress the exculpatory evidence, the fingerprints and footprints that were in the blood at the crime scene of the victim house. See Exhibits (21) and (23). For his final argument, is that Mr. Champion was represented

27

by imcompetent counsel plainly knew that he was hiding evidence of Mr. Champion's innocence. Therefore, Mr. Hollander was in-effective. <u>Townsend v. Sain</u>, 372 U.S. 293, 9 L.Ed. 770 (petitioner entitled to evidentiary hearing when alleged facts, if proven, entitle him to relief). A district court has discretion to appoint counsel for an indigent petitioner in a Section 2254 motion. See <u>United States v. Hinckley</u>, 721 F.Supp. 328 (DC 1989) under (CJA) of 1964, 18 U.S.C. §3006(A)(a)(b). Petitioner requests the court to appoint counsel for supplemental briefing, raising any additional issues that may have merit, and to supplement the issues raised herein. Finally, Petitioner requests that this court hold an evidentiary hearing because the facts of this case cannot be resolved without a hearing.

CONCLUSION

Therefore, for the above given reasons, Petitioner now prays that counsel will be appointed to him, and further facilitate this cause. Appellant has presented unquestionable factual evidence from the record and the law, that warrants further review on his ineffective assistance of appellate counsel and to Recall the Mandate DC Ct. 41(f) and remanded for further proceedings consistent with an opinion.

Respectfully submitted,

*John A. Champion*

John A. Champion
Reg. No. 09586-007
USP Allenwood
P.O. Box 3000
White Deer, PA 17887

Executed on: *Sept 20, 2012*

28

# CERTIFICATE OF SERVICE

I, _John A Champion_ , hereby certify that I have served a true
and correct copy of the foregoing:

Which is deemed filed at the time it was delivered to prison authorities for forwarding to
the court, <u>Houston vs. Lack</u>, 101 L.Ed.2d 245 (1988), upon the court and parties to
litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage

⇨09586-007⇦
      District Court Of U S
      333 Constitution AVE NW
      Washington. DC 20001
      United States

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this _20_ day of _Sept 2012_

Respectfully Submitted,

John A Champion
C95 86007
P.C. Box 3000
White Deer PA
      17887

_John A Champion_

REG. NO. _09586.007_

7009 3410 0001 4923 3813

34

CERTIFICATION


I, _John A Champion_ hereby certify and declare that the foregoing

statements made by me are true and correct to the best of my

personal knowledge and belief. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject

to the penalty for perjury under (28 U.S.C. § 1746).



Respectfully submitted,

Date: _10-15-2012_        _John A Champion_


John A Champion
09551007
P.O. Box 3000
White Deer PA
17887

⇒09586-007⇐
District Court Of U S
333 Constitution AVE NW
Washington, DC 20001
United States


7009 3410 0001 4923 2717



30